**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

APR 22 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

**ROBERT ELMORE; JEREMY CHRISTOPHER;**                          **PLAINTIFFS**
**TED DIBIASE, JR.; NICHOLAS COUGHLIN; AND**
**DOFFLIN, LLC D/B/A**
**DOFFLIN MEDIA GROUP,**
**DOFFLIN MANAGEMENT, LLC, AND**
**DOFFLIN STRATEGIES**

**V.**                                   **CAUSE NO.** 3:16-cv-296 HSO-JCG

**ACRE BEYOND THE RYE, LLC;**
**LYLE HOWRY; RICHARD CRAIG MANLEY,**
**BARRY BERNSTEIN, AND**
**ANDRE GORDON, INDIVIDUALLY, AND AS**
**OWNERS OF ACRE BEYOND THE RYE, LLC;**
**SKINFLY ENTERTAINMENT;**
**LYLE HOWRY, INDIVIDUALLY, AND**
**AS THE OWNER OF SKINFLY ENTERTAINMENT;**
**CINEVIEW 3D STUDIOS, LLC;**
**CHRIS DOTSON, INDIVIDUALLY, AND AS THE**
**MANAGER OF CINEVIEW 3D STUDIOS, LLC; AND**
**JOHN DOES 1-10**                                    **DEFENDANTS**

## COMPLAINT – JURY TRIAL REQUESTED

COME NOW, Plaintiffs Robert Elmore, Jeremy Christopher, Ted DiBiase, Jr., Nicholas

Coughlin, and Dofflin, LLC, by and through counsel, and file this complaint against Acre Beyond

the Rye, LLC, Lyle Howry, Richard Craig Manley, Barry Bernstein and Andre Gordon,

Individually, and as Owners of Acre Beyond the Rye, LLC, Skinfly Entertainment, Lyle Howry,

Individually, and as owner of Skinfly Entertainment, Cineview 3D Studios, LLC, Chris Dotson,

Individually, and as the Manager of Cineview 3D Studios, LLC, and John Does 1-10, and allege

the following:

## Parties

1.      Plaintiff Robert "Bobby" Elmore is an adult resident citizen of Madison County, Mississippi.

2.      Plaintiff Jeremy Christopher is an adult resident citizen of Lafayette County, Mississippi.

3.      Plaintiff Ted DiBiase, Jr. is an adult resident citizen of Madison County, Mississippi.

4.      Plaintiff Nicholas Coughlin is an adult resident citizen of Hinds County, Mississippi.

5.      Plaintiff Dofflin, LLC d/b/a Dofflin Media Group, LLC, Dofflin Management, LLC, and Dofflin Strategies (hereinafter "Dofflin") is a limited liability company organized and existing under the laws of the state of Mississippi, with its principal place of business located in Madison County, Mississippi. Dofflin is owned and operated by its managers, Mississippi residents Nicholas Coughlin and Ted DiBiase, Jr.

6.      Defendant Acre Beyond the Rye, LLC, (hereinafter "Acre") is a limited liability company organized and existing under the laws of the state of Louisiana, with its principal place of business located at 16430 Ventura Blvd, Ste. 305, Encino, California 94136 and its domicile address located at 128 Demanade Boulevard, Ste. 214, Lafayette, Louisiana 70503.   Upon information and belief, Acre's members are all residents of the State of California. Defendant Acre may be served with process by serving its agents for service of process, Laura Sue Warner, at 1376 Tallaha Road, Scobey, Mississippi 38953 and/or Courtland Thomas at 128 Demanade Blvd, Ste 214, Lafayette, Louisiana 70503.   Alternatively, Defendant Acre may also be served by serving its Managing Member, Lyle Howry, at his business offices located at 5619 Lankersheim Blvd, Ste.

2

123, North Hollywood, California 91601 and 9350 Wilshire Boulevard, Ste 203, Beverly Hills, California 90212, or Lyle Howry's personal address located at 37307 Verbena Ct, Palmdale, California 93551. Further, Defendant Acre may also be served by serving its Owners, Lyle Howry, Richard Craig Manley, Barry Allen Bernstein, and/or Andre Gordon at 16430 Ventura Blvd, Ste. 214, Encino, California 94136 or by any other means permitted by the *Federal Rules of Civil Procedure*. At all times relevant hereto, Acre Beyond the Rye, LLC was and remains to be the company responsible for the approval, funding, production, management, operation, and filming of the motion picture *Acre Beyond the Rye* (hereinafter "the Movie") starring actor James Caan in Canton, Madison County, Mississippi. At all times relevant, Defendant Acre owns, operates, purchases, manages, supervises, and/or possesses assets and equipment that were purchased or obtained in the State of Mississippi for the purpose of financing, directing, producing, marketing, and filming of the Movie in Canton, Madison County, Mississippi, including, but not limited to, bank accounts, film equipment, physical and digital film, production equipment, cash loans, capital investments, film licenses and certifications, insurance policies, and other physical or human assets. On or about May 20, 2015, the Mississippi Development Authority certified Defendant Acre's Movie (Acre Beyond the Rye) as a "Motion Picture" as defined in Section 57-86-2 Miss. Code Ann. and granted Defendant Acre's request for a Mississippi Motion Picture Incentive Certificate, certificate number MP-268A. Defendant Acre's certificate expires on May 19, 2016. Upon information and belief, the Movie has not been completed but there are countless hours of edited and/or unedited film in the possession of Defendant Acre. Defendant Acre is responsible for the acts and omissions of its owners, managers, employees and agents under the doctrine of *respondeat superior*.

7. Defendant Lyle Howry a/k/a "Pit Bull" (hereinafter "Defendant Howry" or "Pit

Bull") is an adult resident citizen of Los Angeles County, California and may be served with

process by serving him at his residence located at 37307 Verbena Ct., Palmdale, California 93551.

Alternatively, Defendant Howry/Pitt Bull may be served with process by serving him at his

business offices located at: (1) 128 Demanade Blvd, Ste 214, Lafayette, Louisiana 70503; (2) 5619

Lankersheim Blvd, Ste. 123, North Hollywood, California 91601; (3) 9350 Wilshire Blvd, Suite

203, Beverly Hills, California 90212; (4) 3940 Laurel Canyon Blvd, Studio City, California

91604; and/or (5) 3749 Castala Drive, Palmdale, California 93550.   Defendant Howry can also be

served by any means permitted by the *Federal Rules of Civil Procedure*.   At all times relevant

hereto, Defendant Howry is an Owner and the Managing Member of Defendant Acre and the

Founder and Owner of Skinfly Entertainment.   Defendant Howry/Pit Bull is also the President of

LHP Entertainment, Inc. located at 5619 Lankershim Boulevard, North Hollywood, California

91601.   Defendant Howry/Pit Bull is an ex-actor turned movie producer and self-proclaimed

national and international film finance negotiator. Finally, Defendant Howry/Pit Bull is being sued

individually for his own independent negligence and personal liability and for the negligent and/or

fraudulent acts and omissions committed during the course and scope of his employment with

Defendants Acre and Skinfly Entertainment under the doctrine of *respondeat superior*.

8.     Defendant Richard Craig Manley (hereinafter "Manley") is an adult resident citizen

of Los Angeles County, California and may be served with process by serving him at his residence

located at 3435 Agate Drive, Apartment 1, Santa Clara, California 95051.   Alternatively,

Defendant Manley may be served at his business office located at 16430 Ventura Blvd, Ste. 305,

Encino, California 94136 or served by any means permitted by the *Federal Rules of Civil

Procedure*.   At all times relevant hereto, Defendant Manley is an Owner of Defendant Acre.

Finally, Defendant Manley is being sued individually for his own independent negligence and

4

personal liability and for the negligent and/or fraudulent acts and omissions committed during the course and scope of his employment with Defendant Acre under the doctrine of *respondeat superior*.

9.     Defendant Barry Allen Bernstein (hereinafter "Bernstein") is an adult resident citizen of Los Angeles County, California and may be served with process by serving him at his residence located at 3238 Dona Emilia Drive, North Hollywood, California 91604.   Alternatively, Defendant Bernstein may be served at his business offices located at 128 Demanade Blvd, Ste 214, Lafayette, Louisiana 70503, 16133 Ventura Blvd, PH-A., Encino, California 91436, and/or 16430 Ventura Blvd, Ste. 305, Encino, California 94136 or by any means permitted by the *Federal Rules of Civil Procedure*. At all times relevant hereto, Defendant Bernstein is an Owner of Defendant Acre. Upon information and belief, Defendant Bernstein is/was a primary financer/investor for the Movie filmed in Canton, Madison County, Mississippi. Finally, Defendant Bernstein is being sued individually for his own independent negligence and personal liability and for the negligent and/or fraudulent acts and omissions committed during the course and scope of his employment with Defendant Acre under the doctrine of *respondeat superior.*

10.     Defendant Andre Gordon (hereinafter "Gordon") is an adult resident citizen of Los Angeles County, California and may be served with process at his residence located at 5900 Murietta Ave, Apartment 105, Van Nuys, California 91401.   Alternatively, Defendant Gordan may be served at 8413 SW 164th TER, Palmetto Bay, Florida 33157 or his business offices located at 128 Demanade Blvd, Ste 214, Lafayette, Louisiana 70503 and 16430 Ventura Blvd, Ste. 305, Encino, California 94136 or by any means permitted by the *Federal Rules of Civil Procedure*. At all times relevant hereto, Defendant Gordon is an Owner of Defendant Acre. Finally, Defendant Gordon is being sued individually for his own independent negligence and personal liability and

5

for the negligent and/or fraudulent acts and omissions committed during the course and scope of his employment with Defendant Acre under the doctrine of *respondeat superior.*

11. Defendant Skinfly Entertainment (hereinafter "Defendant Skinfly") is a business that is organized and existing under the laws of the state of California, doing business in the state of Mississippi, with its principal place of business located at 9350 Wilshire Blvd, Suite 203, Beverly Hills, California 90212. Defendant Skinfly may be served with process by serving its Owner, Lyle Howry, at its headquarters located at 9350 Wilshire Blvd, Suite 203, Beverly Hills, California 90212 or by any means permitted by the *Federal Rules of Civil Procedure*. Defendant Skinfly is responsible for the acts of its employees and agents under the doctrine of *respondeat superior*.

12. Defendant Cineview 3D Studios, LLC, (hereinafter "3D") is a business that is organized and existing under the laws of the state of Nevada, doing business in the state of Mississippi, with its principal place of business located at 701 N Green Valley Parkway, Henderson, Nevada 89074. Defendant 3D may be served with process by serving its registered agent NVRA Services, Inc. located at 120 US Highway 50 West, Ste 1, Dayton, Nevada 89403. In the alternative, Defendant 3D may be served by serving its Managers and/or Owners, Chris Dotson, Mark Jacobs, Rhett Nielson, and Steve Sharren at their offices located at 701 N Green Valley Parkway, Henderson, Nevada 89074 or by any means permitted by the *Federal Rules of Civil Procedure*. Defendant 3D is responsible for the acts of its managers, owners, employees and agents under the doctrine of *respondeat superior*.

13. Defendant Chris Dotson (hereinafter "Dotson") is an adult resident citizen of Nevada and may be served with process by serving him at 701 N Green Valley Parkway, Henderson, Nevada 89074 or by any means permitted by the *Federal Rules of Civil Procedure*. At

all times relevant hereto, Defendant Dotson is the Manager and/or Owner of Defendant 3D. Further, Defendant Dotson is/was the primary financer/investor for the Movie filmed in Canton, Madison County, Mississippi. Finally, Defendant Dotson is being sued individually for his own independent negligence and personal liability and for the negligent and/or fraudulent acts and omissions committed during the course and scope of his employment with Defendant 3D under the doctrine of *respondeat superior.*

14. At all times relevant hereto, Defendants Acre, Lyle Howry aka "Pit Bull," Richard Manley, Barry Bernstein, Andre Gordon, Skinfly Entertainment, Cineview 3D Studios, LLC, and Chris Dotson were owners, managers, masters and servants, principals and agents, and/or employers and employees for the motion picture *Acre Beyond the Rye* starring actor James Caan filmed in Canton, Madison County, Mississippi.

15. John Does 1-10 are unknown individuals and entities that participated in the planning, negotiation, hiring, supervision, logistics, production, filming, licensing, and filming of the Movie in Canton, Madison County, Mississippi or any business or individual that hired, facilitated, and/or solicited the Plaintiffs for business services and/or cash loans for the production and filming of the Movie in Mississippi. John Does 1-10 are persons and/or entities whose identities are unknown at this time. The filing of this Complaint is a filing against all John Doe Defendants and this Complaint will be amended in accordance with the *Federal Rules of Civil Procedure* if and when their identities are ascertained.

## JURISDICTION AND VENUE

16. The Plaintiffs reside in and/or conduct business in the State of Mississippi, including Canton, Madison County, Mississippi, and this Court has personal jurisdiction over the Plaintiffs.

7

17.     There is complete diversity of citizenship between the Plaintiffs and all of the

Defendants pursuant to 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value

of $75,000.00, exclusive of interest and costs.   Accordingly, the Court has subject matter

jurisdiction over this civil action.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events giving rise to this complaint occurred in said Division and District.   Further, the

Defendants engaged in negotiations, purchasing equipment, financing, obtaining certificates and

licenses, the producing and filming of the motion picture *Acre Beyond the Rye* in said District, and

other acts sufficient to establish minimum contacts in this District for jurisdictional purposes.

19.     This Court has personal jurisdiction of the Defendants by virtue of their minimal,

purposeful contacts within the State of Mississippi as described herein.

## UNDERLYING FACTS

20.     On July 26, 2015, Plaintiff Ted DiBiase, Jr., an owner of Plaintiff Dofflin, was

approached in Madison County, Mississippi by actor James Caan and Defendants Andre Gordon

and Richard Manley, all of whom were affiliated with The Movie.   DiBiase was asked to facilitate

introductions to residents of Mississippi who could provide short term loans to allow The Movie to

begin production and/or filming, as one of the original investors, Defendant Barry Bernstein, was

wavering in his commitment to fund The Movie just before filming and/or production were to

commence.

21.     On July 27, 2015, a meeting was held at Dofflin's offices in Madison County,

Mississippi.   The meeting was attended by Nicholas Coughlin and Ted DiBiase, Jr. as well as Jeff

Ross, the Producer of the Movie, and Defendants Lyle Howry, Andre Gordon, and Richard

Manley on behalf of Defendant Acre and Defendant Skinfly, and The Movie.   Defendant Chris

8

Dotson was also present during the meeting via telephone. During that meeting, Mr. Coughlin and Mr. DiBiase were advised by the Defendants that for production and/or filming of The Movie to begin, the Screen Actors Guild (hereinafter "SAG") and the Directors Guild of America (hereinafter "DGA") had to receive the sum of $280,000.00 immediately, and that if SAG and DGA did not immediately receive said amount of money, The Movie would be in jeopardy. Further, the Defendants provided documents, information, and other written and verbal assurances explicitly stating that The Movie had funding sources up to $5,000,000.00, but that those funds were not immediately accessible. Thus, the Defendants and The Movie were in need of an immediate short term loan in the amount of $280,000.00, or the entire project was at risk of significant harm or complete failure.

22. During the meeting that occurred on July 27, 2015, DiBiase, Coughlin, and Dofflin were provided both written and oral assurances and guarantees of the overall funding and viability of The Movie. These assurances and guarantees included, but were not limited to:

(a) written and/or oral assurances, promises, and/or guarantees that Defendant Barry Bernstein had previously provided a written guarantee for funding of The Movie up to $3,000,000.00;

(b) written and/or oral assurances, promises, and/or guarantees that Defendant Chris Dotson would fund The Movie up to $5,000,000.00;

(c) production of a letter from Wells Fargo Bank of the ability of Defendant Dotson "to procure funds up to $5,000,000 for the purpose to fund the film – *Acre Beyond the Rye*." (Please see Wells Fargo Letter, attached as Exhibit 1);

(d) documentation of The Movie's status as a project approved to move forward in the State of Mississippi, which would entitle The Movie and its producers to rebates up to

9

$545,000.00 for money spent in Mississippi on The Movie (Please see Certificate, attached as Exhibit 2);

(e) that The Movie was fully insured; and

(f) other documentation concerning The Movie, its producers, the Movie's investor(s), and other business records demonstrating that the Movie was a legitimate, viable, and secure venture (Please see the Louisiana Secretary of State Documents and Articles of Organization regarding Acre Beyond the Rye, LLC, attached as Exhibit 3).

23. Based on the documents and the written and oral assurances, promises, and/or guarantees provided by the Defendants to DiBiase, Coughlin, and Dofflin on July 27, 2015, DiBiase, Coughlin, and Dofflin agreed to seek out Mississippi individuals who could provide the immediate short term loan of $280,000.00 required by SAG and/or DGA so that production and/or filming of The Movie could commence. In exchange for Dofflin's services, Dofflin was promised two percent (2%) ownership in the net proceeds of The Movie, and Dofflin's members, Plaintiffs Ted DiBiase, Jr. and Nicholas Coughlin, were made co-executive producers of The Movie, entitling them, at a bare minimum, to compensation of $50,000.00 each. (Please see Email to Nicholas Coughlin dated July 27, 2015, attached as Exhibit 4).

24. With the information in hand, and in reliance on that information and the other written and oral assurances, promises, and/or guarantees, Dofflin began its work to locate Mississippi individuals who could provide the necessary and immediate short term loan to pay SAG and DGA. On July 27, 2015, Plaintiff Dofflin contacted Plaintiffs Elmore and Christopher and provided the information and documents produced by the Defendants concerning the Movie, the viability of The Movie, the investors of The Movie, as well as the other written and oral assurances, promises, and/or guarantees made by the Defendants regarding the overall funding and

10

viability of The Movie.   In reliance thereon, Plaintiffs Elmore and Christopher agreed to provide short terms loans as set forth below.

25.     Plaintiff Bobby Elmore agreed to provide the sum of $140,000.00 in exchange for a 10% return ($14,000.00) on the principal loan amount within eight (8) days.   A Promissory Note (hereinafter "Elmore Note") setting forth all the terms and conditions of the agreement was executed by Acre Beyond the Rye, LLC and Plaintiff Elmore on July 27, 2015. (Please see the executed Promissory Note between Elmore and Acre, attached hereto as Exhibit 5).   The Elmore Note and its terms and conditions are incorporated herein by reference as if fully reproduced in words and figures.   Specifically, Plaintiff Elmore was promised repayment of the principal amount of $140,000.00 plus 10% interest by August 5, 2015 (hereinafter "default deadline"). Pursuant to the terms of the Elmore Note, if the loan was not repaid with interest by the default deadline, Plaintiff Elmore would be owed additional interest at the rate of 5% per month on the balance owed beginning the day after the default deadline.   The Elmore Note further provides that "[a]ll costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower." Defendant Acre has breached the contract with Plaintiff Elmore and defaulted on the Elmore Note.

26.     Plaintiff Jeremy Christopher agreed to provide the sum of $140,000.00 in exchange for a 10% return ($14,000.00) on the principal loan amount within eight (8) days.   A Promissory Note (hereinafter "Christopher Note") setting forth all the terms and conditions of the agreement was executed by Acre Beyond the Rye, LLC and Plaintiff Christopher on July 27, 2015. (Please see the executed Promissory Note between Christopher and Acre, attached hereto as Exhibit 6). The Christopher Note and its terms and conditions are incorporated herein by reference as if fully

11

reproduced in words and figures. Specifically, Plaintiff Christopher was promised repayment of the principal amount of $140,000.00 plus 10% interest by August 5, 2015 (hereinafter "default deadline"). Pursuant to the terms of the Christopher Note, if the loan was not repaid with interest by the default deadline, Plaintiff Christopher would be owed additional interest at the rate of 5% per month on the balance owed beginning the day after the default deadline. The Christopher Note further provides that "[a]ll costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower." Defendant Acre breached its contract with Plaintiff Christopher and defaulted on the Christopher Note.

27.    Plaintiff Christopher's Promissory Note was personally guaranteed by Lyle Howry and SkinFly Entertainment on July 28, 2015. The Personal Guarantee is attached hereto as Exhibit 7 and is incorporated herein by reference as if fully reproduced in words and figures. The Personal Guarantee assured Plaintiff Christopher that in the event he was not paid the total of $154,000.00 by the default deadline (August 5, 2015), Defendant Howry, as Owner of Skinfly Entertainment, would personally repay the principal amount, plus interest at 10% for every 45 days that the payment is not made. Defendant Howry a/k/a Pitt Bull and/or Defendant Skinfly breached the Personal Guarantee executed on July 28, 2015.

28.    Prior to the execution of the above-described Promissory Notes and Personal Guarantee, Plaintiff Christopher contacted Wells Fargo Bank and verified the legitimacy of the correspondence indicating Defendant Chris Dotson's ability to procure up to $5,000,000.00 to fund The Movie. Plaintiff Christopher also spoke directly with Defendant Chris Dotson by phone. Dotson again promised and/or guaranteed that he was going to fund The Movie and that

12

there was "zero percent risk" of default on the short term loans and interest.   The guarantees and promises given by Defendant Dotson were false.

29.     In reliance on the above written and oral promises, guarantees, and/or assurances, on July 28, 2015, Plaintiff Elmore wired the total of $140,000.00 from his bank accounts to SAG and/or DGA for The Movie.

30.     In reliance on the above promises, guarantees, and/or assurances, on July 28, 2015, Plaintiff Christopher wired the total of $140,000.00 from his bank accounts to SAG and/or DGA for The Movie.

31.     Following the provision of the $280,000.00 by Plaintiffs Elmore and Christopher, production and/or filming of The Movie commenced in Madison County, Mississippi, on July 29, 2015.

32.     On or about July 30, 2015, Defendant Chris Dotson was in Mississippi and on the set of The Movie in Canton, Madison County, Mississippi.   Defendant Dotson again represented to multiple people, including Dofflin members Ted DiBiase, Jr. and Nicholas Coughlin, as well as other people present on the set (including Mississippi Governor Phil Bryant and Defendant Lyle Howry) that he (Defendant Dotson) was funding The Movie.

33.     On or about July 30, 2015, Defendant Dotson provided funds to Defendant Acre in the sum of approximately $250,000.00.   Not a single dollar of that money was used to repay the loans procured by and/or from the Plaintiffs as described herein.   Instead, upon information and belief, those funds were diverted to others, including the Defendants, individually, and/or the Defendants' business entities.

34.     The August 5, 2015, deadline established by the above-referenced Promissory Notes came and went and Plaintiffs Elmore and Christopher were not paid pursuant to the terms

13

and conditions set forth in the Promissory Notes.

35.    On or about January 15, 2016, Defendant Acre received a rebate check issued by the State of Mississippi Department of Finance and Administration in the amount of $32,110.28. On January 21, 2016, Defendant Howry reconfirmed the debts owed to Plaintiffs Elmore and Christopher and agreed to make a partial payment to the Plaintiffs using the rebate check.  *See* January 21, 2016 executed Agreement, attached as Exhibit 8 and incorporated herein by reference as if reproduced in words and figures.

36.    On January 27, 2016, Defendant Howry, on behalf of Defendant Acre, wired a total of $32,110.28 into an account set up by Plaintiffs Elmore and Christopher.   No other payments have been made by the Defendants to Plaintiffs Elmore and Christopher, despite multiple demands for payment after the passage of the default deadline.

37.    Plaintiffs DiBiase, Christopher, and Dofflin have also not received any compensation for their services from the Defendants.

38.    The Plaintiffs have incurred damages in excess of $500,000.00 as a result of the Defendants' actions set forth herein.

### **Count I–Breach of Contract As To Plaintiffs Elmore and Christopher**

39.    The foregoing paragraphs are incorporated herein as if fully restated.

40.    Valid and binding contracts existed between the Plaintiffs Elmore and Christopher and the Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson, as the parties entered into contractual relationships as evidenced by the oral communications and the Promissory Notes, Personal Guarantees, Letter from Wells Fargo Bank, and other written and oral contracts described herein.

41.    By the conduct described herein and as will be revealed in discovery and proven at

14

trial, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson have breached those contracts that they entered into with the Plaintiffs Elmore and Christopher.

42.     The aforesaid breaches have caused the Plaintiffs Elmore and Christopher to suffer damages as set forth in this Complaint, and entitle Plaintiffs Elmore and Christopher to recover from Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

### Count II–Breach of Contract As To Plaintiffs DiBiase, Coughlin, and Dofflin

43.     The foregoing paragraphs are incorporated herein as if fully restated.

44.     Valid and binding contracts existed between the Plaintiffs DiBiase, Coughlin, and Dofflin and the Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson, as the parties entered into a contractual relationship as evidenced by the email referenced above and other written and oral contracts described herein.

45.     By the conduct described herein and as will be revealed in discovery and proven at trial, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson have breached those contracts that they entered into with the Plaintiffs DiBiase, Coughlin, and Dofflin.

46.     The aforesaid breaches have caused the Plaintiffs DiBiase, Coughlin, and Dofflin to suffer damages as set forth in this Complaint, and entitle Plaintiffs DiBiase, Coughlin, and Dofflin to recover from Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

### Count III–Bad Faith and Tortious Breach of Contract
### As To Plaintiffs Elmore and Christopher

47.     The foregoing paragraphs are incorporated herein as if fully restated.

48.     As described herein, valid and binding contracts existed between Plaintiffs Elmore and Christopher and the Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and

15

Dotson. The breach of those contracts by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson as described in this Complaint resulted from an intentional wrong, insult and/or abuse by those Defendants, which was conducted in bad faith.

49.     As a direct and proximate result of the bad faith and tortious breach of those contracts, Plaintiffs Elmore and Christopher have suffered damages and are entitled to recover from Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

## Count IV–Bad Faith and Tortious Breach of Contract
### As To Plaintiffs DiBiase, Coughlin, and Dofflin

50.     The foregoing paragraphs are incorporated herein as if fully restated.

51.     As described herein, valid and binding contracts existed between Plaintiffs DiBiase, Coughlin, and Dofflin and the Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson. The breach of those contracts by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson as described in this Complaint resulted from an intentional wrong, insult and/or abuse by those Defendants, which was conducted in bad faith.

52.     As a direct and proximate result of the bad faith and tortious breach of those contracts, Plaintiffs DiBiase, Coughlin, and Dofflin have suffered damages and are entitled to recover from Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

## Count V–Breach of Duties of Good Faith and Fair Dealing

53.     The foregoing paragraphs are incorporated herein as if fully restated.

54.     Under Mississippi law, all contracts contain an implied covenant of good faith and fair dealing. Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson have breached this duty as to all Plaintiffs by operating in a manner inconsistent with the agreed purpose between the parties. Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson

16

have acted in bad faith and in a manner that violates standards of decency and fairness.

Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson have acted in a manner

that is inconsistent with the justified expectations of the Plaintiffs.

55.     As a direct and proximate result of such conduct by the Defendants Acre, Howry,

Manley, Bernstein, Gordon, Skinfly, and Dotson, Plaintiffs have suffered actual damages and

losses and are entitled to the relief requested herein.

### Count VI—Negligent Misrepresentation

56.     The foregoing paragraphs are incorporated herein as if fully restated.

57.     As described herein and as will be proven at trial, Defendants Acre, Howry,

Manley, Bernstein, Gordon, Skinfly, and Dotson made numerous misrepresentations and/or

omissions of fact to the Plaintiffs.  The misrepresentations of Defendants Acre, Howry, Manley,

Bernstein, Gordon, Skinfly, and Dotson to the Plaintiffs included, but were not necessarily limited

to, the following: (1) that the monies required by SAG and/or DGA to commence filming The

Movie were not immediately available but would be available to pay off the Elmore Note and

Christopher Note with the agreed upon interest within 8 days; (2) that The Movie was fully funded

up to $5,000,000.00 by Defendant Dotson; (3) that Defendant Bernstein had previously provided a

written guarantee of funding of The Movie up to $3,000,000.00; (4) that the short term loans

secured by the Elmore Note and Christopher Note involved "zero risk" and that return of the

principal with interest was thus guaranteed; (5) the provision of a written assurance from Wells

Fargo Bank regarding the availability of $5,000,000.00 to Defendant Dotson to fund The Movie;

(6) the availability of rebates from the State of Mississippi up to $545,000.00, which funds were

said to be further guarantee of a source of payment for the Plaintiffs; (7) that The Movie would be

substantially filmed, produced, and otherwise completed in the State of Mississippi, thus ensuring

eligibility for the Mississippi rebates that would further guarantee payment of the Plaintiffs; (8) that the Movie's funds were being held in a bank account within the State of Mississippi; (9) other representations about the legitimacy and viability of The Movie and similar future projects; and (10) any other misrepresentations to be revealed in discovery and proven at trial of this matter.

58.     The representations made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson were false.

59.     The representations made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson were material, in that they concerned the very reason for the relationships between Plaintiffs and Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

60.     In making the representations at issue, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson failed to exercise that degree of diligence and expertise that the Plaintiffs were entitled to expect of reasonably competent people in those Defendants' positions.

61.     The Plaintiffs reasonably relied upon the misrepresentations or omissions made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

62.     As a direct and proximate result of the negligent misrepresentations of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson and Plaintiffs' reasonable reliance thereon, Plaintiffs have suffered actual damages and losses and are entitled to the relief requested herein.

## Count VII–Fraudulent Misrepresentation

63.     The foregoing paragraphs are incorporated herein as if fully restated.

18

64.     As described herein and as will be proven at trial, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson made numerous misrepresentations and/or omissions of fact to the Plaintiffs.  The misrepresentations of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson to the Plaintiffs included, but were not necessarily limited to, the following: (1) that the monies required by SAG and/or DGA to commence filming The Movie were not immediately available but would be available to pay off the Elmore Note and Christopher Note with the agreed upon interest within 8 days; (2) that The Movie was fully funded up to $5,000,000.00 by Defendant Dotson; (3) that Defendant Bernstein had previously provided a written guarantee of funding of The Movie up to $3,000,000.00; (4) that the short term loans secured by the Elmore Note and Christopher Note involved "zero risk" and that return of the principal with interest was thus guaranteed; (5) the provision of a written assurance from Wells Fargo Bank regarding the availability of $5,000,000.00 to Defendant Dotson to fund The Movie; (6) the availability of rebates from the State of Mississippi up to $545,000.00, which funds were said to be further guarantee of a source of payment for the Plaintiffs; (7) that The Movie would be substantially filmed, produced, and otherwise completed in the State of Mississippi, thus ensuring eligibility for the Mississippi rebates that would further guarantee payment of the Plaintiffs; (8) that the Movie's funds were being held in a bank account within the State of Mississippi; (9) other representations about the legitimacy and viability of The Movie and similar future projects; and (10) any other misrepresentations to be revealed in discovery and proven at trial of this matter.

65.     The representations made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson were false.

66.     The representations made by Defendants were material, in that they concerned the very reason for the relationship between Plaintiffs and Defendants Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

67.     At the time they made the representations at issue, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson knew that they were false.

68.     At the time they made the representations at issue, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson intended for the Plaintiffs to act or not act in the manner reasonably contemplated, based upon the contents of the representations that were made.

69.     At the time of the representations at issue, Plaintiffs were not aware of the falsity of the representations by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

70.     Plaintiffs relied upon representations of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson and had the right to rely upon those representations.

71.     As a consequent and proximate result of the false representations made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson, Plaintiffs herein were injured and are entitled to the relief requested herein.

### Count VIII—Promissory Estoppel

72.     The foregoing paragraphs are incorporated herein as if fully restated.

73.     As set forth herein, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson made representations to the Plaintiffs that later proved to be untrue.

74.     As set forth herein, Plaintiffs reasonably relied on the representations made by Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson.

75.     Plaintiffs relied on those representations to their detriment, and were damaged thereby.

20

76.     As a direct and proximate result of the Plaintiffs' detrimental reliance on the representations of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson, Plaintiffs were damaged and are entitled to recover from those Defendants.

## Count IX—Equitable Estoppel

77.     The foregoing paragraphs are incorporated herein as if fully restated.

78.     As set forth herein, Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson pursued a course of conduct to induce Plaintiffs to enter business relationships with those Defendants.

79.     Plaintiffs relied upon the course of conduct of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson, and Plaintiffs changed their conduct as a result of that reliance.

80.     Plaintiffs' actions taken in reliance on the conduct of Defendants Acre, Howry, Manley, Bernstein, Gordon, Skinfly, and Dotson were detrimental to the Plaintiffs, making those Defendants liable to Plaintiffs under the doctrine of equitable estoppel.

## Count X—Negligence

81.     The foregoing paragraphs are incorporated herein as if fully restated.

82.     In the alternative, and in addition to the conduct as set forth herein, at all times, Defendants were imposed with non-delegable duties under law, including, but not limited to, the following: to act in a manner consistent with reasonable care, to conduct the underlying business consistent with industry practice and standards, and other such duties to be shown through discovery and at trial.

83.     Defendants breached these and other duties owed to Plaintiffs.   The breach of these duties was a proximate cause of the damages complained of herein.

21

## Count XI—Negligent Infliction of Emotional Distress

84.     The foregoing paragraphs are incorporated herein as if fully restated.

85.     All Defendants owed a duty to Plaintiffs Elmore, Christopher, DiBiase, and Coughlin to use reasonable care and to act prudently to avoid the infliction of emotional distress on Plaintiffs Elmore, Christopher, DiBiase, and Coughlin.  Defendants breached that duty by the conduct described in this Complaint and that will be revealed in discovery and proven at trial.

86.     Defendants knew or should have known that the conduct described herein and the harms resulting from that conduct would cause mental and emotional distress to Plaintiffs Elmore, Christopher, DiBiase, and Coughlin, as such was a reasonably foreseeable consequence of that conduct.

87.     By the conduct described herein, Defendants negligently and proximately caused mental and emotional distress to Plaintiffs Elmore, Christopher, DiBiase, and Coughlin, entitling those Plaintiffs to damages.

## Count XII—Outrage

88.     The foregoing paragraphs are incorporated herein as if fully restated.

89.     By the conduct described herein, all Defendants engaged in behavior that would shock the conscience of a reasonable person.  As such, Defendants are liable to Plaintiffs for commission of the tort of outrage.

90.     As a direct and proximate result of their outrageous conduct, Defendants have directly and proximately caused damages to the Plaintiffs, entitling the Plaintiffs to recover damages from the Defendants.

## Count XIII–Tortious Interference With Business Relations

91.     The foregoing paragraphs are incorporated herein as if fully restated.

92.     By diverting to other entities monies that should have been used to repay the monies owed to Plaintiffs Elmore and Christopher or compensate Plaintiffs Dofflin, DiBiase, and Coughlin and other conduct described herein and to be proven at trial, Defendants Cineview 3D and Skinfly (as well as their owners, members, and agents) tortiously interfered with the business relations between the Plaintiffs and Acre.

93.     The interfering acts described above were intentional and willful.

94.     The interfering acts were calculated to cause damage to the Plaintiffs in their lawful business.

95.     The interfering acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause.

96.     Plaintiffs suffered actual damage and loss as a result of the interfering acts and are entitled to recover from Defendants Cineview 3D and Skinfly.

### Count XIV–Unjust Enrichment

97.     The foregoing paragraphs are incorporated herein as if fully restated.

98.     By way of an alternative claim for relief, Plaintiffs would show that, should Defendants not be held to account for conduct as described herein and as will be proven at trial, Defendants would be unjustly enriched.

99.     Accordingly, Plaintiffs are entitled to recover any element of damages necessary to prevent the unjust enrichment of any or all Defendants.

### Count XV—Punitive Damages

100.     The foregoing paragraphs are incorporated herein as if fully restated.

101.     The acts and omissions of the Defendants as alleged herein were intentional and were attended by such willful, wanton, and reckless disregard for the Plaintiffs' rights and/or fraud

as to amount to an independent tort justifying the imposition of punitive damages and/or extra-contractual damages pursuant to Mississippi law.

### Joint and Several Liability

102.    The foregoing paragraphs are incorporated herein as if fully restated.

103.    By the conduct described herein, the Defendants consciously and deliberately pursued a common plan or design to commit a tortious act, or actively took part in it, warranting imposition of joint and several liability pursuant to *Miss. Code Ann.* § 85-5-7 and related authority.

### Damages

104.    The foregoing paragraphs are incorporated herein as if fully restated.

105.    The Plaintiff's damages were foreseeable to the Defendants.   Therefore, the Plaintiff is entitled to monetary damages.   As a direct and proximate result of the Defendants' conduct, the Plaintiff is entitled to compensatory damages, economic and non-economic damages, loss of goodwill, reimbursement of penalties and fees, extra-contractual damages, pre-judgment and post-judgment interest, punitive and exemplary damages, incidental and out of pocket expenses, attorneys' fees and litigation costs, and such other relief as justice requires.

### Jury Demand

106.    The Plaintiffs demand trial by jury on all issues so triable.

### Prayer for Relief

107.    Based on the foregoing, the Plaintiffs are entitled to damages and to other relief from the Defendants, jointly and severally, including, but not limited to:

(1) Process be issued as required by law and that the Defendants be served with a copy of the summons and complaint;

(2) Compensatory damages;

24

(3) Contractual damages;

(4) Economic and non-economic damages;

(5) Loss of goodwill;

(6) Reimbursement of penalties and fees;

(7) Extra-contractual damages;

(8) Punitive and exemplary damages;

(9) Fees and costs, including attorneys' fees and litigation costs;

(10) All costs of collection;

(11) Pre-judgment and post-judgment interest, as allowed by law;

(12) Incidental and out of pocket expenses; and

(13) For any other relief as the Court deems just and proper and such other relief as justice requires.

This the **22**nd day of April, 2016.

> **BOBBY ELMORE,  JEREMY CHRISTOPHER,**
> **TED DIBIASE, JR., NICHOLAS COUGHLIN,**
> **DOFFLIN, LLC D/B/A DOFFLIN MEDIA GROUP**
> **AND DOFFLIN MANAGEMENT, LLC, PLAINTIFFS**

BY:   BEN WILSON

25

**OF COUNSEL:**

Rocky Wilkins (MSBN 99707)
Ben Wilson (MSBN 103586)
ROCKY WILKINS LAW FIRM, PLLC
475 E. Capitol Street
Jackson, MS 39201
T: 601-948-6888
F: 601-948-6889
E: rocky@rockywilkinslaw.com
E: ben@rockywilkinslaw.com

Graham P. Carner (MSBN 101523)
GRAHAM P. CARNER, PLLC
775 N. Congress Street
Jackson, MS 39202
T: 601.949.9456
F: 601.354.7854
E: graham.carner@gmail.com